Michael G. Doane, Counsel for Appellant Michael Don Cobb, Stephen L. Tesley, Council for Acquaintances and some more acceptance, Corporation. Will Counsel for the Appellant please come forward and identify himself. Certainly, Your Honors. May it please the Court, Attorney Michael Doane, for Michael Cobbs, the Appellant. How much time would you like to reserve for rebuttal? I'm going to go eight in the beginning and seven at the end. Okay. You're familiar with the case. You've already said that. The bankruptcy court screwed up. They screwed up on the facts, they screwed up substantively on the law, they screwed up on procedure. Better to say that it's a mistake and trust me. It's a mistake. Better also to explain how. Where would you like me to start? Facts, law, or procedure? Explain why Taggart's, the Ninth Circuit's decision in Taggart doesn't roll over your argument. Well, the Ninth Circuit in Taggart just came out, obviously, in April. It's under review. There's a lot of, there's in bank right now, pending, with three amicus on it. Do we need to wait for that? Or is that the law that governs us? Well, if you wait, I'm confident they're going to rehear it and probably overturn it like they did in the Schwartz-Tallard case. That's my opinion. So it's up to the bankruptcy court, or the appellate court, if they want to wait. But there's other issues here that they can certainly decide on before getting to that. I can see why there would be some concern about Taggart, because it's based on Zilog. But at this point in time, Taggart only reiterates the law in the Ninth Circuit as it existed before Taggart was decided. It does it beyond that. It takes Zilog to a whole new level. It makes the discharge Swiss cheese. Any unreasonable belief that the claim does not, that the discharge does not apply to the claim is out the window. I mean, if an attorney says, oh, the discharge doesn't apply, that's an unreasonable belief. I can do what I want. If there's a pre-petition contract that says discharge doesn't apply, the creditor says, hey, it's in the contract. I mean, basically, any unreasonable belief is going to get the creditor free from sanctions. And that's why I think it's going to get reversed. But I don't think Taggart is before us because we're on a totally different law that Judge Latham created. Which is? Zilog was very specific. Zilog gave a two-part test. Did the discharge, did the creditor know the discharge applied to its claim? And did the discharge do the act which violated the discharge? The judge found that the creditor violated the discharge. It sent harassing billing notices to collect. And that's not a dispute. Nissan doesn't dispute that. And the judge found for that. But the judge said, instead of, did the creditor know the discharge applied to its claim? And it confused both parts of the test. It said, did the creditor know the discharge applied to its conduct? Conduct and claim are two different things. Well, let me ask you this. Nissan's entire claim was not discharged, right? I mean, their rights in the vehicle were not affected by the discharge, correct? The interim rights were not affected. But that wasn't before the court. And the debtor had surrendered it right after discharge. And Nissan was well aware of that. There's another issue about the manner in which it was surrendered, which I think is not before us, but which I find troublesome. But anyway, let's skip over that. So the Ninth Circuit is very clear on that test. Why don't you let the judge ask his question first? I didn't know if there was a question, sorry. Go ahead, go ahead. I was going to say the Ninth Circuit is very clear on the two-part test. And Taggart solidifies it. Throughout the opinion, it refers to claim. If you look back at- No word that doesn't say conduct. If you look back at Zilog, Zilog starts off by saying the party has to know that the discharge was applicable. Correct. And then later on, it starts talking about being applicable to a claim. Correct. Now, the discharge is an injunction, right? Correct. Doesn't an injunction operate on conduct? That's what injunctions do, right? They stop people from doing things. They do. So how can- doesn't it make perfect sense to say a discharge injunction applies to conduct? It absolutely does. But that's not the test. I mean, if the BAP's going to create a new subpart of the Zilog test, then that's something new, obviously. But it's- there's no circuit law for that. You know, you have Zilog, you now have Taggart, and they all talk about claim. You have all the BAP decisions, you have all the bankruptcy court decisions. They all refer to claim. Not one court refers to conduct. I've searched. I can't find one. This is the first. And- Well, my question is this. How can a claim violate an injunction? Because it's an act to collect on the claim. It's the act that violates the injunction. It's not the claim that violates the injunction, right? Right. It seems to me that when we talk about- I was on the Taggart panel. It seems to me when we talk about the discharge applying to a claim, we're talking about- we're sort of using shorthand. There has to be an act that is- that the discharge applies to. That's not what the case law says. The case law says the intent with respect to the claim. It doesn't say intent to act to claim. It's just intent to claim. It's a direct intent element to the claim. And the act is the second part of the test. There is no subjective mind state for the second part of the test. Did you do the act? Did you intentionally do the act? Court found yes. There was no computer glitch. The notices didn't go out. There was a screw-up on the facts, which is the second part of my argument. And the record conclusively shows that they were aware the discharge applied to their claim. And they were aware that the notice or the request to send billing statements were revoked. When did that occur? That occurred in August and September. And why- that was based upon your notices, including the notice of surrender that was sent to the Kinwes Parkway address. Why was it sent to the Kinwes Parkway address? That was not- that was the original notice that was sent, and they had the- Why wasn't it sent to the Dallas? Let me back up a second. Initially, the creditor logged in its notes that there was a repossession, and that was in August. And we're complaining of all the acts of September, October, November, and after. So August, Nissan knows that the car is repossessed. Why send a billing statement at that point? It's in their call logs. Can I back up just a little bit? Because I approach this a little differently than you do. You approach it like bankruptcy lawyers approach it. But this case law, contempt of a court order, didn't arise out of bankruptcy law. It arose out of other law in which a judge orders someone to do something, and therefore the litigant heard the judge say it, knows what the order is, and walks out of the court and violates the court order. And the judge brings him in, holds him in contempt of the court order, because he knew about it, and said, screw you, I'm going to do it anyway. In the bankruptcy context, we send out notices in the mail. We have an injunction that operates by statute. And it just doesn't work. We send out the notice and it says there's an injunction, they may or may not have gotten it, and there is confusion. In the Ninth Circuit case, we have female litigants who are pursuing a claim, a work discrimination claim. They've been told, despite what they're getting in the mail, that they can go forward with their lawsuit. They go forward with their lawsuit. It doesn't work. It turns out they violated the injunction. And the Ninth Circuit says, well, that all may be true. They may have violated the injunction, but they really didn't intend to violate the injunction. They're not the same as the person who comes in and says, I heard your order, but I'm going to do it anyway. And so here we have kind of the same situation. We've got a very confusing set of communications from the debtor to the creditor, in which the creditor now is confused about whether the bankruptcy applies. You can disagree with me, but it's better not to shake your head at me. And so it's not the same situation, based on that kind of communication, as the law that's developed with contempt. Am I wrong about that? Now you can tell me why I'm wrong. The creditor wasn't confused. That's where you're wrong. The creditor had it all over their collection log. They knew the injunction applied. They just miscoded it. They sent another request to send statements. I sent a letter to the creditor. I faxed it, and Judge Latham said, yeah, they got the fax on September 8th. And it said, do not contact my client again. I will sue you. No more. A mitigation letter. They coded it to send a request for statement letter. They weren't confused. They just screwed up. Very simple. And those are the facts. They're in the record. They don't dispute it. There's about five and a half minutes left. All. Good luck. Good morning, Your Honors. Stephen L. Chesney, appearing on behalf of the appellee, NMAC. Briefly, in terms of how we view the situation is that, bottom line, is that we never intended to violate the discharge injunction. Well, counsel, let's deal with the problem that your client presents, which is because of the multiple ways you approach a consumer. In other words, you have billing departments. You've got bankruptcy departments. You've got collection departments. Aren't you always in a position to say, well, we didn't intend to violate the discharge injunction? We just messed up the paperwork. No, Your Honor. I think when you look at the facts of this case, when you have the six times that Mr. Cobbs contacted our client, saying that, in effect, to send the billing statements, that is something that, in terms of this case, that could not be part of others. This is something where there's numerous affirmative acts by Mr. Cobbs for us to send them the statements. But there was also an affirmative act at some point that said, stop sending the statements, and Nissan sent three or four more, correct? Well, there was the letter that Mr. Doan did send. I dispute the way that he characterizes the fact of whether my client really actually knew to actually stop sending the statements. That's really the crux here. I think that that's… Develop that a little bit more because eventually the vehicle is sold. Eventually there's a motion to hold you in contempt that's filed, which I presume that you got from ECF, and then you send two billing statements after that. Well, here's what happened. In terms of how that all was shaking out, Your Honor, the situation was such that my client still did not know that Mr. Cobbs wanted the billing statements to be stopped. After the motion to hold you in contempt? Well, the motions, Your Honor, those were sent to, I believe, an address that was for agents in the service of process. We did not get all of the documents. Did you not get it through ECF? No, Your Honor, we did not. No, they mailed it to the registered agent. Well, my clients did not get that notice. They did not. Well, they didn't get it through the bankruptcy process. Correct. So the thing, though, is that, as I said, there's no intent to violate the discharge order. But that goes to Judge Kurtz's initial point as to the diffuse nature of what is Nissan. Well, I don't know if I'm answering your question, but I realize that, yes, we do have certain aspects in different departments, and that is true. And it's never something where you want to stand there and say, hey, you know. Well, help us with our problem. I think the bankruptcy courts are troubled by Zilog and how it's developed because we see some obligation to protect the discharge injunction, to make it have some impact so that people don't do things in violation of the discharge injunction.  which basically requires the litigant almost to be in court and hear the judge say, don't do something, and then have the litigant stand up and say, I'll do what I wish before you can find him in contempt, just doesn't work in the bankruptcy context. We send out notices, and we want that notice to be effective, and we want people to respect that notice. And we find ourselves dealing with banks and car companies who come in and say, well, we didn't intend to violate the injunction, and you sent the notice to our registered agent, and that didn't get to the bankruptcy guy. Or you sent it to the local office, and that office was closed two weeks ago, and so we didn't get it. I mean, how do we prevent you from filing the discharge injunction if you simply can always come up with some sort of bureaucratic response that gives you a get-out-of-jail card, saying, well, we screwed up, but we didn't intend to violate the court order? Well, I think maybe this gets to maybe something where it goes to, say, what we do for legislation. Because I think the way that it should work in a perfect world, I think, is that when we have the, especially for creditors, having the registered address for the bankruptcy courts, I think that all the communications should go through to that address. And so when we don't have that, then it makes it more difficult because, like you said, there are different departments. But that address is registered with the Bankruptcy Noticing Center, correct? That's right. Is that publicly available, publicly known? Do people know to go to the BNC when they're not sending a mail through the BNC to find that address? I think it's something that we probably have to look through into the bankruptcy court to get that accomplished. The thing here, though, is that Mr. Cobb is represented by counsel. Mr. Doan has been a bankruptcy lawyer for many, many years, and so he has practiced. So I think that issue in this context I don't think really applies because he does have help in that regard. But as I said, I think that's where it should really go because, like I said, it makes it very confusing for creditors because they're saying that they're not getting it. It's confusing for debtors because they're saying, well, I sent this document to an address of that particular creditor. We have a code section that was supposed to answer these questions. 342 was supposed to answer these questions, but I didn't see anywhere in the record that either side argued whether these notices were or weren't sufficient under Section 342. So there is a statutory provision that may or may not solve the problem, but there at least was an effort to deal with picking the right address. Well, as I said, I'm sure this is from the case law. This is not the first time this issue has arisen, as we were discussing today. But I think that's probably where I think the law should go so that we can kind of streamline it instead of having, as you say, creditors can say, well, we have multiple addresses and we screwed up. Well, I think the area that some courts have tried to carve out, which is this conduct is so egregious that it's not believable. In other words, you clearly knew and you clearly violated the discharge injunction. Based on what you've done here, I just don't, I'm not going to accept your explanation that you didn't know. And I'm not going to hold the litigant to the standard of proving a subjective content to violate the discharge injunction. The problem with the case law as it now stands is that you could stand before us and say, yeah, we did it and we're sorry. Me bad, we bad, but we didn't really intend to violate the discharge injunction. And you win. And that doesn't seem right. Well, if I could add one thing on. In terms of looking at the conduct of whether it's proper for a creditor to contact a debtor after the discharge injunction is in place, I cited in my brief Nash when it talks about that there are post-discharge contacts that are allowable. And so in this situation, Mr. Cobbs indicated that he wanted to pay the debt. But you sent him a notice of default on November 29th, which is effectively a month plus after the motion was filed. Well, again, it goes to the fact that we didn't understand that we wanted him to. Well, that's an interesting slice here because under agency laws, I mean, Nissan knew, NMAC knew. It's just that whoever was responsible, if anybody was and it wasn't a computer, did not appreciate, which gets to the dichotomy between how you slice this for a corporate entity versus the actual unreasonable belief. Well, I think, Your Honor, as part of that notice, there is the provision in there about that if the debtor that's receiving this notice is in bankruptcy, then this is not to be considered as an attempt to collect on a debt. Was that in the notice of default? Yes. But does it make a difference? I mean, isn't even an unreasonable belief sufficient as long as there's no subjective intent to violate the order? Well, I think the Ninth Circuit has set a very strict standard here in terms of finding consensual discharge orders. And that's the thing that we're dealing with here, too, is that in, I believe it was, I think it was Nash again, where it talks about the case of Bennett, Dyer, and Zylock. And it says that these cases demonstrated a strict standard for I mean, isn't that the criticism of the Taggart decision? The Taggart decision seems to hold that even an unreasonable belief may be sufficient so long as there isn't a subjective intent to violate the court order. Well, I respectfully disagree with that. I don't think it quite gets to the level of an unreasonable intent. I think that ultimately if there's some kind of showing of unreasonableness by the creditor, then, you know, maybe we have to look at it a little bit differently. But I do believe that, as you said, looking at the Zylock case. Well, I hear what you're saying. I think you're giving away more than you need. Well, I know. You know, I just think that in the end, I think that my client certainly did not intend to violate the discharge order. But your client knew. I mean, it got multiple statements, including at some point, at some level, the motion itself. It just didn't get to the exact person or computer, which I don't think is in the record, who controlled these things going out, right? As I said, in terms of even receiving the original motion by Mr. Doan, that they did not receive all the documents. They had to go through the record and to retrieve them. And that's what happened. But as I said, I think that my client did have the right to send the billing statements based upon Mr. Collins' prior contact. And the fact that the vehicles may have been sold and disposed of still doesn't say that there's a revocation of the desire to send the billing statements and to pay the debt, ultimately, which under the Bankruptcy Code, Mr. Collins is entitled to. And I think you would find some comfort in the Ninth Circuit decision because the women litigants in that case had basically received mixed messages. They had received notices from the Bankruptcy Court that the debt had been discharged, that they were creditors, and they'd received the normal discharge injunction. But they'd been told by the lawyers that it didn't apply to their – I mean, that there was a confirmed plan, but that their plan had been dealt with, and they'd been told by the lawyers they could go forward with their lawsuit. And under that kind of mixed situation, the court said, well, there's no intent to violate the – subjective intent to violate the court order. Well, I mean, as you probably can imagine, I'd like to say this is really as effective on this case, too. Further? Thank you. Thank you. Five minutes and 23 seconds. Just a real quick cleanup. In my brief or my reply, I talk about 342. It only applies to the automatic stay, not the discharge. Let me ask about that. Some of your stuff was sent by mail. Some of your communications regarding reaffirmation were oral. Don't we have a system to which this creditor has submitted himself so that you can send all the notices by ECF? No? We followed the rules, Your Honor. The contempt proceeding says you've got to go 90-20 to 90-14 and use the adversary rules of 7004, send it to the agent. We did what it said. As far as the cease and desist, I had my secretary call Nissan, give us a fax number so we can give you notice to stop doing this, and she sent it, and it's in the record. You're getting into the legal argument, but the facts are there. You don't even have to reach the legal argument. They knew. But the judge denied us that, and that's the third point, is there was no process. There was no evidentiary hearing. He denied us discovery. Discovery was outstanding. We were trying to get at the intent. We found all these holes in their reply. It's all over the record. They knew of it. They knew the repossession. They miscoded the cease and desist notice. But what more did you expect to get through discovery? I mean, what more would you have offered at a trial? They've already admitted to a lot of stuff. I wanted to confirm everything. I wanted to confirm all the screw-ups. I wanted to confirm. They received it five, six different times. But isn't that just sort of they didn't really deny, well, they did deny receiving stuff. But the court, in a way, it seems to me, almost gave you the benefit of the doubt and said that you sent all these things. The court didn't doubt that things were sent to the addresses at which you sent them. I guess I'm wondering whether you were looking for just icing on the cake through discovery or whether there was something new that you reasonably expected to get. The judge stopped all discovery. Basically, he said, I want to look at this before we even get to discovery. And he said, after I approach that, then I'll decide if there's discovery. He wanted to look at Zilog and how that applied. And the argument, obviously, is that it didn't apply correctly. But he also did mention, he said, I understand there's factual disputes. I understand there's factual disputes of their intent. What was really their intent? There's factual disputes of the actual damages. And I listed in my briefing all the different factual disputes. We didn't even get there. I mean, you've got to have an evidentiary hearing. And 9014 allows discovery when there's factual disputes. There was no stipulation. There was no agreement. And we, on the record, Your Honor, we want an evidentiary hearing. I filed this thing per in re barrientos, a motion for contempt. The judge should have just defaulted right then and there. This wasn't a request for an application to show cause. This was a request for contempt. He gave me a second bite at the apple, and then we sent out five more notices, and then they responded on the last day. Doesn't the judge have discretion to say, I want a little better notice, even if you've given the minimally adequate notice? I agree. And maybe we get a little bit more of an evidentiary hearing. It's good for the goose. It's good for the gander. Nash doesn't apply. He gave up the car. They knew that. It's in their evidence that they submitted. Why would you send a billing statement if the car's not there? What other purpose other than to harass? And, again, the court keeps focusing on the intent element. Even if we accept what you say is true, all you've really proven is they've messed up. How do you prove that they subjectively intended to violate the stay, that someone who knew that the discharge injunction, I say stay, the discharge injunction applied, that the debt had been discharged, and that they said, yeah, I don't care, I'm going to send out a billing statement? You just made that case. What would they accomplish by sending out a billing statement? First of all, you said they knew the discharge injunction applied. And that's what the court found, and that's what they don't deny. The intent element only goes with the act. If the computer screwed up, okay, they're out, second part of the test. The first part is, did they know the discharge applied to the claim? They don't deny that. The Ninth Circuit only talks the claim. Latham is reading conduct where the word claim exists, and you're giving credit to that, but it just does not exist. I understand what you're saying. Are there any other questions? No. Again, I think this case can be decided just on the facts alone. If you look at the record, it shows conclusively they were on notice. It's negligence. They screwed up on negligence. The only reason this thing stopped was because I brought a motion. If I did not bring that motion, they'd still be harassing. Thank you very much.
judges: Kurtz, Faris and Spraker